May it please the Court, I am Brent Scott. I represent the Appellant Plaintiff in this matter, Mark Rome. The Plaintiff presented 297 undisputed statements of a material fact in this case. The Defendant objected to all of them. The Court failed to rule on any of them. And each of those should be deemed admissible. I will address briefly, if I may. Just put that aside for a moment. The whole procedure under the central district rules of asking the parties to submit your statement of undisputed facts and your counterstatement is simply an aid for the district court to see where is there a material dispute in the facts. I agree, Your Honor. Okay? So you don't treat them, you know, you don't, it doesn't work the way you just suggested it should. So the question here is, at least the way I see it, there's no dispute here about the, if you do the analytical framework on the first step, they acknowledge that you established a prima facie case. You acknowledge that they come back with a legitimate business reason. He violated a rule. And then the question is, is there a dispute, is there a genuine dispute about whether that reason was pretextual that requires a trial? I agree with that, Your Honor. So what facts will you point to that show that there is a factual, a genuine dispute that would be outcome determinative that would require a jury to, or a finder of fact to resolve that dispute? Yes, Your Honor, I'll address that. The two primary issues that the court has raised dealt with whether or not Glaxo had a good faith belief that my client violated its policies. There was evidence that, in fact, countered the evidence submitted by Glaxo on that issue. The second was there was substantial evidence and specific evidence of pretext presented by the plaintiff to show that the true reason was not based on good faith. When you look specifically at the ruling of the district court, as the court has said, the district court found a prima facie case of age discrimination. It found a causal link for retaliation. And it even said that the original agreement may not be in effect regarding at-will employment. Counsel, I need more concreteness in your answer to Judge Paez's question. I'm looking for a genuine issue on pretext. My recollection is that there was a dinner, and at the dinner, Rome says one thing was said, and his boss, who persuaded her boss to get rid of him, says another thing was said. So it looks as though there's an issue of material fact about who said what at the dinner, and I want to know if that's true. One of them does basically call the other a liar in the affidavits, and if it's material. Can you refresh my recollection on the dinner? Certainly, Your Honor. This dinner consisted of four individuals, Dr. Cassandra Richards, an independent consultant for Levita, Nikki Gallucci, an administrator, Paul Miller, an executive sales rep for Glaxo, and my client, the plaintiff. The issue that was raised that Rome has sworn under testimony and provided declaration that he never promised anything to Dr. Richards. Paul Miller, who was present. He never promised a specific amount. He promised to try to help them. Yes, Your Honor. Paul Miller testified absolutely there was no promise made whatsoever, and if Rome had ever done that, he would have reported them to Glaxo. The only evidence that Glaxo has submitted of their belief that he had violated this policy was Owen's telephone conversation with Dr. Richards, her telephone conversation with Nikki Gallucci, and her conversation with Rome. That was the extent of it. I'm mixed up. Maybe I misunderstood. I thought, well, first of all, Rome lost the case, so it's his problem to establish a genuine issue. It's not Smith-Klein's problem to establish a genuine issue. So all I need is a genuine issue from Rome, and I thought that at the dinner, his boss says that one thing was said, and Rome says another thing was said. Am I confused on that? His boss wasn't at the dinner. His boss wasn't at the dinner. She was just going on what allegedly was said by Dr. Richards. Richards called her after the dinner. Isn't that right? That's correct, Your Honor. And here's part of the problem. The defendants first claimed that there was an actual violation. Then they dropped back and said it didn't matter if there was a violation or not. It was just whether or not there was a good faith belief that he had violated. And that goes to the Cotran case cited by the defendant in this matter, the California Supreme Court, which set forth specific requirements on the defendant to put forth substantial evidence to support a good faith belief. And plaintiff in this case suggests there was no good faith belief. There was no substantial evidence. As in Cotran. I'm not sure you're right. It seems, if I understand the law right, if they fire him because of his age and the notion that he tried to basically bribe a customer was a mere pretext, then he gets to go to trial if he's got evidence of that. If they fired him because they thought he tried to bribe a customer, even though they were just totally out in left field, but it had nothing to do with age. It had to do with their mistaken belief that he tried to bribe a customer. They win. You don't get to go to trial. Yes, Your Honor. Have I got that right so far? Yes, I believe so. Now, what I want to know is where's the evidence that they fired him? Where's the evidence arising out of this dinner? I remember it as being critical that they fired him because of age or to put it more specifically that the claim that they fired him because of an attempt to bribe a customer was a mere pretext. The evidence to support this pretext begins with the very fact set forth in Cotrans. Cotrans required four specific things to establish there was a good faith belief. They didn't exist in this case. In Cotrans, they had to reach it honestly after an appropriate investigation, after notice to the plaintiff, and after an opportunity for the plaintiff to respond. None of that was done in this case. So what investigation was done to determine that Rome had violated the company policy? There was no investigation done, Your Honor. And in fact, Owens, his superior, failed to even interview Paul Miller, a crucial witness to this case. She knew he existed, failed to refer that information to Glaxo's HR department. She failed. She obtained a written response from Rome, never gave it to the HR department. The HR department took that information, referred it to the compliance office, who with no investigation whatsoever concluded on those facts alone that Rome had violated its policy and therefore recommended termination. Who made the suggestion that Rome be fired? Compliance office recommended reprimand or termination. Carrie Stellings in HR recommended reprimand or termination. Malia Owens made the decision, according to Stellings, to terminate Rome. And based on that fact and the combination of all the things that were withheld, in addition to the prima facie case of age discrimination, all the information withheld by Owens to the HR department and the HR and compliance department's failure to honestly investigate, give him notice. He was given no notice. He was terminated the day he was handed a piece of paper. He was given no good cause hearing. He filed a grievance in advance, not allowed to complete the grievance procedures. I feel like we're getting a field. I mean, they can be rotten bosses, but as long as they don't fire him because they think he's too old, they're okay. Okay. Addressing specifically the age discrimination, defense never countered the prima facie evidence of age, and the court never discussed that. But the Lindsey case. Either this doctor was trying to shake him down for a lot of money, and he was resisting, or he was trying to bribe the doctor, and then when he couldn't come up with the money, the doctor complained to the drug company. Well, the evidence is, the controverted evidence is that he never made any promise to her. She was greedy. He had told Owens about these demanding problems. Miller had confirmed that several times, and essentially he put on a strong prima facie case of age discrimination. In the Lindsey case, Lindsey held that if a disparate treatment plaintiff raises a genuine tribal issue in their prima facie evidence, they may not even have to put on any evidence to counter the legitimate reason. The legitimate reason. Let's say we go a little further. What is the specific evidence that it was pretext? The specific evidence stems with the repeated, continuing, discriminatory, disparate treatment we've set forth in multiple examples. How about just refreshing my recollection? By his superior. Counsel? Yes. Let's assume I don't remember the whole file, and why don't you just tell me really pitifully what the best evidence is that this was a firing for age, and that the claim that they were firing him because of his attempt to bribe a customer was a mere pretext. Yes, Your Honor. Both Owens and Glaxo repeatedly favored, showed favor to younger employees for advancement and promotion. There were 10 denials of promotion that Rome tried to get given to younger people. There were five cases of his peers given additional training and promotion denied by Owens to him. In addition to that, there were comments made by Owens about when he was going to retire. He was not in the new computer generation. He was old and had memory lapses. All of those show that her state of mind was... How old was he? Pardon me? How old was he? He was 49 at the time, Your Honor. Based on the ADA of 1967, older people are supposed to be promoted based on their ability, not based upon their age. He was denied promotion repeatedly, denied training, and then given one disgruntled customer in 25 years a complaint over the telephone. He was terminated. The decision was made by Owens. She didn't have to do that. That wasn't mandatory. They had progressive discipline. Now, it's one disgruntled customer who claims he tried to... He promised her a lot of money and then didn't come through with it. What is there in the record that would show that the company knew that the customer was not telling the truth? There's nothing in the record that the company did anything to verify it either way. Cotrans said they have to do that. They didn't do that. In Cotrans, that was a California state case? Supreme Court case based on several... This is a federal Title VII case. I understand that, Your Honor. I thought this was an FEPC case. This is under the Fair Employment Practices Act. Yes, Your Honor. A state law claim that got removed to federal court because of diversity. Yes, and the Cotrans case was cited by the defense as a compelling case in their favor when, in fact, in reverse, it showed that the defendant did nothing that was required by law to verify any of these facts alleged against my client after 25 years. Okay, so on the state law claim, what you've got is failure to verify. Do you have anything more to show that the real reason the company fired him was not the customer complaining that he promised her money and didn't come through with it? Yes, Your Honor. That goes to the retaliation claim. There was no discussions about termination until my client reported discrimination and harassment about Malia Owens to their ERC department. After that, she became angry. She found out about it. Owens called and found out about it. Is that right? Stellings called her and told her about it. Owens got ticked off and angry and called and said, what's being done? I want action taken on Rome, and subsequently, with no investigation, a decision was made without any good cause hearing or anything to terminate him. And multiple officers and managers joined into this decision with no one, and they admitted. Stellings knew about the complaint, Rome's complaint about the age harassment. That's right. Did the other person also know about the age harassment? Owens did, yes. No, but there was another person. Karen Barnett in HR was assigned to investigate that claim. There's no evidence of any investigation of Rome's claim. The two people that ratified or signed off on the decision to let him go. Romanowski knew about it. Stellings knew about it. Yes. And did Romanowski know about it? There was no evidence that he was told anything other than to just sit in and listen about the claims of Richards and determine the termination. And ultimately, Owens initially contended she didn't know who terminated my client. Ultimately, Stellings testified under oath. She made the decision. Owens made that decision. That shows the malice that we claim on Owens. She wanted to get Rome out. She replaced him with a younger, far less experienced individual, Ruth Chris, completing the cycle of the requirements for under McDonnell Douglas of a prima facie case of age and also under the Cornell case for retaliation. Counsel, I remembered what it was that was in the back of my mind about a contradiction, and I want you to enlighten me on it. Yes, Your Honor. If I understood the record right, and I'm not sure I did, Malia Owens testified that Rome admitted to her that he knew he had violated company policy on paying off customers. Rome testified that that was a lie. He had not said to Malia Owens that he knew he had violated company policy and had promised to pay off a customer. What he said was merely that he would try to be helpful to the customer, something like that. That's correct. Have I got this right? You have that right, and what confirms the difference of these testimonies is three things. Malia Owens testified she didn't even know what the grant amount was. She didn't know specifically what policy Rome actually violated, and she even approved the two requests made by Levita, Dr. Richards and Gallucci, for $2,500 within the grant policy. They give doctors $2,500 or $5,000 for continuing medical education? Yes. And this doctor wanted $40,000 in her pocket for being a presenter? Absolutely, plus up to $400,000 in other demands confirmed by Paul Miller. And yet Owens knew this, but yet still conveyed this message to HR that this man, in her opinion, admitted violating the policy. She didn't even know which policy it was or what the limits were. That's her testimony, Your Honor. She was impeached repeatedly in her deposition and her declaration, conflicted with the statement. I don't care what turns out to be true. I just want to know if there's a genuine issue, a material fact. That's why we believe there was a travel issue of fact between Rome's side and what GlaxoSmith claimed after 25 years. If there was an admission, if he admitted, well, I know I violated this important company policy about bribing customers, then he'd be out even if he just did it once, right? He admitted he knew the policy. He'd passed two great tests, 100%. He knew the policy, and he said, yes, he could be terminated if he violated that policy, but he did not violate the policy which was confirmed by Paul Miller, which raised the travel issue of fact. Now, why wouldn't they think that he had? Because he had 25 years of personnel, performance, awards, commendations. Not one thing in his record to indicate this man was honest. He passed those tests, didn't he? He passed two tests, 100%. He knew the policy. There was absolutely no motive or incentive, Your Honor, for him to violate that policy. His peers testified. They've never heard him violate any policy or make any such promises. In Coltrane, Coltrane interviewed 21 witnesses. I wouldn't say absolutely no motive. He's got this greedy doctor who's complaining to his boss about him, and he certainly has a motive to keep her satisfied and off his back. Well, he had already gone to Malia Owens before the complaint and said, I have problems with her. Help me. What do I do? She just shined it on and sent him off to some district manager to try to help him. So he had to just deal with it the best he could. He went to this simple meeting. The facts are clear of what happened. I thought she assigned Mr. Miller to help him. She assigned another district manager initially, I believe, Your Honor, and then Miller got involved, and then Miller went to this meeting, and Miller was unimpeachable. His testimony was credible, and yet the judge, I asked the district court judge to review Miller's testimony. He later said it was an opinion he did. He saw a disputed fact, but it didn't apply to whether or not there was a good faith belief of an investigation conducted, which I disagreed with, but the Cotrans says you have to show more. You have to show there was not a good faith belief, and there wasn't a good faith belief based on the evidence in this case, Your Honor.  Thank you, Your Honor. Good morning. My name is Meryl Manninger, and I represent Defendant Apelli, SmithKline Beachham Corporation, doing business with GlaxoSmithKline, or GSK as we refer to them. And if it helps the court, let me, I'm sorry. Counsel, it looked to me as though, as Judge Paez mentioned earlier, the Prima Facie case and the legitimate business reason were pretty clear on this record, and it was all about pretext. Yes, except for as to the retaliation claim based on the DFEH complaint. And in that instance, there was no, undisputed facts were that Glaxo, GSK did not get the DFEH complaints or know about them at the time of the termination. Ms. Stellings and Ms. Owens both put that in their declarations below. Mr. Rome, Mr. Scott did not dispute that in their replies to our statement of undisputed facts. So that's undisputed. Do you think an inference could be drawn that she was fired right after making the complaint that the firing resulted? There are two different complaints at issue here. There's an internal complaint to the Employee Relations Committee, and I'll agree a Prima Facie case is made as to that. But there was also an external complaint made to the DFEH. First one, two sent off in July 31. They weren't received in Sacramento until August 11, and then were sent on August 20 to GSK. The internal complaint could be drawn. They were aware of that, and I agree there's a Prima Facie on that one. I agree that the issue is, was there any evidence to support? Here's my problem in this case. We'll never know exactly what's true, whether the doctor was shaking down Rome or whether Rome was trying to bribe the doctor. That's not what we decide. But it looks like if Rome's evidence is believed, and for summary judgment purposes, it has to be taken as true to see if it would establish a genuine issue of fact. No such thing as finding a fact on summary judgment. If his evidence is believed, then what the jury would have to conclude that there was pretext is all the other hires are under 40. His boss makes a whole lot of needling remarks about his age. There's falsification by his boss about what she was told, and you can infer from falsification that the truth is adverse to a party. If he's believed Dr. Richards was shaking him down, his boss knew it and used it as a pretext to fire him, when the real reason was she had some problem with people over 40. Why isn't that enough for a genuine issue? Well, I don't think the facts are as you described. Well, they may not be. I don't know if the facts are as I described either. That's a much more extreme case than we have here. I'm just saying, does he have evidence in the file so that a jury could permissibly infer that the facts are as I've just described? No, I'm sorry. There is no evidence to even infer that from. A couple of things. One, this was due to be a bench trial. It doesn't matter for summary judgment purposes. No, I know that, but there's been a refrain through the papers that somehow the jury was robbed of considering this. It doesn't matter. It's totally irrelevant. It's a summary judgment. We know that. I know that. But there was no falsification. Dr. Richards, there is no dispute. Mr. Rome called Ms. Owens and said, she's angry at me. In fact, I think you said, she blew up at me. She thought she was going to get a grant. She wants to talk to you. Ms. Owens called her. Dr. Richards said, he promised me a grant of $20,000, Levita Medical Group, a grant of $20,000. Then Dr. Richards testified to that in a deposition and by declaration. It is absolutely undisputed. It was not disputed. I thought it was disputed. I thought Rome said that's not true. No, that she complained that he. No, no. No, no. He says that he made the promises not true, but the fact of the complaint is undisputed. And so that's what is GSK's. But it's not the fact that the patient, or not the patient, that the doctor made a complaint that got him canned. It was that it was believed that he had proposed to bribe a doctor that got him canned. No, the complaint is about, you call it a bribe. It's a promise of a grant. The complaint, Dr. Richards, he promised me, he promised my group a grant, and now I have a program set up. I don't have money to pay for it. I'm in a mess. And he says, I didn't make that promise. I didn't promise anything. I didn't make that promise. Now, then Ms. Owens called Ms. Gallucci, the administrator, and confirmed that there are other surrounding problems related to the grants. She then reports it to Human Resources, who says, okay, I'm going to follow up on that. We'll get back to you. There is absolutely no dispute that the allegation that the promise was made is there. That was an undisputed fact below, and that is the legitimate business reason. Yes, Ms. Owens then called Mr. Rome back. Look, it's not believable that a company would fire a salesman where a customer made a totally unreasonable demand and complained about the salesman not meeting it. But nobody, the totally unreasonable demand, I'm not aware, is that a reference to the $400,000 grant? He put $40,000 in my pocket and $4,400,000 in my pocket. It wasn't $40,000. He promised me an unrestricted grant to pay for a program, and now I have less money than I expected. And I have this program coming up. Well, the deal she wanted was $400,000 for a clinic, $40,000 in her pocket, right? But GSK was never aware of that. GSK was never aware of that. The only thing GSK knew about was Dr. Richard's calling and saying, he promised me $20,000, now I got $5,000. And now I'm in a bind because I don't have this extra money, which is essentially already. So really all that matters there is, did he promise me $20,000? Well, I don't think. He didn't promise her $20,000. I think the law allows GSK. Counsel, wait a minute. I'm sorry. If he promised her $20,000, then he violated company policy. Correct. If he did not promise her $20,000, but she's in a bind because she thought she'd be able to get $20,000 or $400,000 or whatever, then he's not in a bind. He did not violate company policy. Is that right? That's correct. But GSK had a good faith belief of the violation based on the complaint. What strikes me, what leaps out at me is the absence of any hearing, any inquiry of Rome. She just assumed he had done something terrible and the word was passed, get rid of him. Actually. Why was there no hearing? There wasn't a formal hearing because GSK doesn't have a formal. There was no formal hearing. No hearing. Because they don't have a GSK. No formal hearing, there's no hearing. Ms. Owens called him back, and this is where the dispute is. Ms. Owens called him back that same day and said, okay, this is what's going on. That is not a hearing. And got his explanation from him. Well, I wouldn't call it a hearing. Under COTRAN, you have to have a reasonable investigation under the circumstances. That's not a reasonable investigation. How is that possibly a reasonable investigation? To get the other side of the story and then submit it on to compliance? Did she call Mr. Miller? Mr. Miller was somebody that Dr. Richards told Ms. Owens about. Well, she knew that Mr. Miller was at the dinner. She also knew Ms. Gallucci was at the dinner, and Dr. Richards said, please call Ms. Gallucci. But did she talk to Mr. Miller? No, but I will say Mr. Miller testified. So in answer to Judge Newton's question, what was the investigation that they did? I would submit that Ms. Owens calls to Dr. Richards, Ms. Gallucci, and then Mr. Rome himself constituted their investigation, then passing it on to HR. And was it written up? She written up in her notes, which are in our excerpts of record that were sent on to and those notes identify Mr. Miller. Those were sent on to HR. Okay, so what did HR do? HR then took it to compliance. What did compliance do? Compliance asked questions. Who did they ask questions of? I guess Ms. Stellings. You guess. There was not a lot of discovery done on the compliance piece, and so there's nothing there. So there was really no meaningful investigation here. And that's what creates the genuine issue of fact. Was there a reasonable, good-faith belief? And that all depends upon the extent of the investigation that took place here. And there was virtually none. You know, it amazes me. Here's a very large company. It's got these various departments. One of them calls Human Resources. And it just blows it. I mean, why didn't the HR people and the compliance people do more? It's just so strange. I can't say that we have the benefit of hindsight here. What's that? We have the benefit of hindsight here and may say things should have been done differently. They have the benefit of being on the scene and doing something about it. And I can appreciate that things could have been done differently. To me, it doesn't seem strange if Malia Owens hates Rome and has been wanting to get rid of him for years and has no use for what she regards as old men and is looking for the first excuse. That's really what the case is about. Is it a pretext? Well, and I would submit that that evidence is very slim, and certainly not specific and substantial as is required. The missed positions, there's a list in the opening brief, and then there's evidence cited. Of those ten positions listed, the evidence doesn't pertain to about half of them. Several of them are from 2004. As to the positions that Mr. Rome didn't get, he had no evidence that it was not because of age. Ms. Owens wasn't the decision-maker on all of them. None of them was Ms. Owens the decision-maker. You know, something that would have really aroused me if I'd been working for the company and wondering what was going on, if I had been in a different department from Owens or Rome, would have been, boy, this doctor sure is grasping. Gee, she wants a lot of money. We don't usually give out that kind of money, and she's making calls to shake more out of the tree. We ought to look into this because there's something really dirty going on here, either a doctor trying to extort money or somebody that works for us trying to pay a bribe to place drugs and samples. Your Honor, there's no evidence that GSK, other than Mr. Rome, was aware of anything other than the promise of $20,000. This $400,000 allegation is something Mr. Rome testified to at a deposition, occurred in a conversation, but there is no shakedown. And GSK has an ongoing grant program. Counsel, you're pretending you've tried the case. That is not true. This is summary judgment. We take all the evidence wherever there's a conflict on summary judgment. We treat it as though the trier of fact would believe Rome's evidence and disbelieve GlaxoSmithKline's evidence. That's summary judgment. So you can't tell me what the evidence proves. I'm sorry. I mean to tell you what it proves in telling you that he didn't have any evidence that he submitted anything about $400,000 promises to anyone. All he testified to in deposition and what we're making something of a leap from is that everybody was aware she was grasping for some huge sum of money. All that was known was that she thought she was going to get a $20,000 grant and instead got a $5,000 grant. And he got fired for that? For making the promise. But there's a dispute about whether he made the promise. You didn't call Mr. Miller and say, Did he make a promise? Mr. Miller actually testified later that Richards complained to him that Rome made a promise. So if we talked to Miller, if Owens had talked to Miller, that would have been information she would have received. Miller would have told her that he made a promise? That Rome had made a promise to Richards. But we know that when Miller was at that dinner, he testifies that no promise was made of any amount at that dinner. And I agree that's a disputed fact. And it's a significant fact. It was made at the dinner or not. There's no dispute that Dr. Richards was emphatic that the promise was made. This whole case could turn on what happened at that dinner, as Judge Kohlingfeld said, at the very beginning of this argument. I would like to take a moment to rebut the issue of the comments. There are a handful of comments that I would submit aren't even directly related to age. And, you know, in particular, the one that the lower court talked about, which was the issue of your ---- It just provides a background. That's all. Okay. And then last ---- You know, this relationship has been a long, ongoing relationship for a number of years, as Judge Newman noted. This fellow had been there for, what, 20-some odd years? He'd only been working with Mr. Owen for five years. Now, how long had he been with the company, though? Well, he was with predecessor companies, yes, for 20-some odd years. I don't know, 25 years. And look what you get at the end. And I appreciate that. It's not, you know, a happy end to a long career. And, you know, unfortunately, it was, you know, an unfortunate incident. I would also like to respond to the issue of falsification. There was no falsification. What happened was Ms. Owens talked to Mr. Rome. He said, as he testified in his deposition, I may have told him they had different opportunities for funding, but I didn't promise any money. And that's what Ms. Owens conveyed to HR. He did say, or as Owens testified, he did say in that phone call, he did say that he had told Dr. Richards he would pay for food and speakers on the side, and that would be a separate violation. And he disputes that, and I agree that's an undisputed ---- that is a disputed fact. Once something is disputed, there's just no point telling us your side of the story. It just doesn't matter because it's summary judgment. Okay, but I'm trying to rebut the claim of falsification. And so there was nothing ---- even if you take it uncontroverted, I don't believe that it was a falsification. Even if ---- that's the way we have to take it. We have to take ---- you don't seem to get the point. We take his evidence, what's in the depositions and so forth. I appreciate that. I do understand the point. I'm sorry. If the Court has no further questions, I'd be happy to sign. Thank you, Counsel. We went through all your time, but if you want to take 30 seconds or a minute for rebuttal, go ahead. Just 30 seconds, Your Honor. The Court focused on the issue of pretext. And I'll restate, after hearing Counsel's argument that there was no falsification by Malia Owens, three simple facts. She withheld crucial evidence of Paul Miller from HR. She never contacted him. The second crucial fact, there was absolutely no investigation of either Rome's claim against Owens or Richard's claim against Rome. And third, there was no opportunity for Rome to give his side of the story. She withheld his own written explanation and no hearing of any kind, given a chance to a man that had given his life to them for 25 years. Thank you, Your Honor. Thank you, Counsel. Rome v. Smith-Klein is submitted. We'll hear Milton Green Archives v. BPI. Thank you, Your Honor.
judges: Noonan, Kleinfeld, Paez